IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LENA G. ODELL,                          1:13-cv-00515-BR

        Plaintiff,                      OPINION AND ORDER

v.

CAROLYN W. COLVIN, Acting
Commissioner, Social Security
Administration,[1]

        Defendant.


ARTHUR WILBER STEVENS, III
MARLENE R. YESQUEN
Black Chapman Webber & Stevens
221 Stewart Avenue
Suite 209
Medford, OR 97501
(541) 772-9850

        Attorneys for Plaintiff

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this case.  No further action need be taken to continue this case by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405.

1 - OPINION AND ORDER

**S. AMANDA MARSHALL**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**DAVID MORADO**
Regional Chief Counsel
**LISA GOLDOFTAS**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-3858

            Attorneys for Defendant


**BROWN, Judge.**

     Plaintiff Lena G. ODell seeks judicial review of a final

decision of the Commissioner of the Social Security

Administration (SSA) in which she denied Plaintiff's applications

for Disability Insurance Benefits (DIB) under Title II of the

Social Security Act and Supplemental Security Income (SSI)

payments under Title XVI.

     This Court has jurisdiction to review the Commissioner's

decision pursuant to 42 U.S.C. § 405(g).  Following a thorough

review of the record, the Court **REVERSES** the decision of the

Commissioner and **REMANDS** this matter to the Commissioner pursuant

to sentence four, 42 U.S.C. § 405(g), for further administrative

proceedings consistent with this Opinion and Order.


2 - OPINION AND ORDER

## ADMINISTRATIVE HISTORY

Plaintiff filed her applications for DIB and SSI on January 16, 2009. Tr. 25.[2] The applications were denied initially and on reconsideration. An Administrative Law Judge (ALJ) held a video hearing on August 22, 2011. Tr. 25. At the hearing Plaintiff was represented by an attorney. Tr. 25. Plaintiff and a Vocational Expert (VE) testified at the hearing. Tr. 25.

The ALJ issued a decision on September 16, 2011, in which he found Plaintiff is not disabled and, therefore, is not entitled to benefits. Tr. 37-38. That decision became the final decision of the Commissioner on January 25, 2013, when the Appeals Council denied Plaintiff's request for review. Tr. 14.

## BACKGROUND

Plaintiff was born on June 25, 1975, and was 36 years old at the time of the hearing. Tr. 139. Plaintiff completed high school. Tr. 166. She has past relevant work experience as a data-entry clerk. Tr. 36.

Plaintiff alleges she has been disabled since June 30, 2007, due to bipolar disorder, a bad knee, and "other mental illness problems." Tr. 160.

---

[2] Citations to the official transcript of record filed by the Commissioner on September 20, 2013, are referred to as "Tr."

3 - OPINION AND ORDER

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 28-36.

## **STANDARDS**

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might

accept as adequate to support a conclusion." *Molina*, 674 F.3d.
at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574
F.3d 685, 690 (9th Cir. 2009)).  It is more than a "mere
scintilla" of evidence but less than a preponderance.  *Id.*
(citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility,
resolving conflicts in the medical evidence, and resolving
ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir.
2009).  The court must weigh all of the evidence whether it
supports or detracts from the Commissioner's decision.  *Ryan v.
Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even
when the evidence is susceptible to more than one rational
interpretation, the court must uphold the Commissioner's findings
if they are supported by inferences reasonably drawn from the
record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).
The court may not substitute its judgment for that of the
Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir.
2006).

## DISABILITY ANALYSIS

### I.   The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential
inquiry to determine whether a claimant is disabled within the
meaning of the Act.  *Keyser v. Comm'r of Soc. Sec. Admin.*, 648

F.3d 721, 724 (9th Cir. 2011).  *See also Parra v. Astrue*, 481
F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520, 416.920.
Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner
determines the claimant is engaged in substantial gainful
activity.  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  *See
also Keyser*, 648 F.3d at 724.

At Step Two the claimant is not disabled if the Commissioner
determines the claimant does not have any medically severe
impairment or combination of impairments.  20 C.F.R. §§ 404.1509,
404.1520(a)(4)(ii), 416.920(a)(4)(ii).  *See also Keyser*, 648 F.3d
at 724.

At Step Three the claimant is disabled if the Commissioner
determines the claimant's impairments meet or equal one of the
listed impairments that the Commissioner acknowledges are so
severe as to preclude substantial gainful activity.  20 C.F.R.
§§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  *See also Keyser*, 648
F.3d at 724.  The criteria for the listed impairments, known as
Listings, are enumerated in 20 C.F.R. part 404, subpart P,
appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must
assess the claimant's residual functional capacity (RFC).  The
claimant's RFC is an assessment of the sustained, work-related
physical and mental activities the claimant can still do on a

6 - OPINION AND ORDER

regular and continuing basis despite her limitations.  20 C.F.R. §§ 404.1520(e), 416.920(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).  The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis when the ALJ is determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.

*Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## II.  Evaluation of Drug and Alcohol Abuse

A claimant is not considered disabled if drug addiction or alcoholism is a contributing factor material to the determination of disability.  42 U.S.C. § 1382c(a)(3)(J).  *See also Monan v. Astrue*, 377 F. App'x 629, 630 (9th Cir. 2010).  Substance abuse is a material factor when the claimant's limitations would not be disabling if the claimant stopped using drugs or alcohol.  20 C.F.R. §§ 404.1535(b), 416.935(b).

Thus, if the claimant is found to be disabled and there is medical evidence of substance abuse, the ALJ must determine whether drug addiction or alcoholism "is a contributing factor material to the determination of disability."  20 C.F.R. §§ 404.1535(a), 416.935(a).  To assess the materiality of drug or alcohol abuse, an ALJ must first conduct the five-step inquiry without distinguishing the separate impact of alcoholism or drug addiction.  *Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007) (citing *Bustamante v. Astrue*, 262 F.3d 949, 954 (9th Cir. 2001)).

If the ALJ finds the claimant is not disabled under the five-step inquiry, the claimant is not entitled to benefits. If the ALJ finds the claimant is disabled and there is medical evidence of her drug addiction or alcoholism, the ALJ should proceed under § 404.1535 or § 416.935 to determine whether the claimant would be disabled if she stopped using alcohol or drugs. *Bustamante*, 262 F.3d at 955 (internal quotation omitted). *See also Parra*, 481 F.3d at 746-47. The ALJ must make a second five-step sequential inquiry to "evaluate which of [the claimant's] current physical and mental limitations, upon which [the ALJ] based [the] current disability determination, would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or all of [the claimant's] remaining limitations would be disabling." 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). *See also Parra*, 484 F.3d at 474. In other words, the ALJ must perform the sequential five-step inquiry a second time without taking the claimant's substance abuse into account to determine whether drug addiction or alcoholism "is a contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(a), 416.935(a).

The claimant's substance abuse is a "contributing factor material" to the disability determination when the claimant's remaining limitations would not be disabling if the claimant stopped using drugs or alcohol. 20 C.F.R. §§ 404.1535(b),

9 - OPINION AND ORDER

416.935(b).  If substance abuse is a "contributing factor
material" to the disability determination, a claimant is not
considered disabled.  42 U.S.C. § 1382c(a)(3)(J).  *See also*
*Parra*, 481 F.3d at 746.  In such materiality determinations, "the
claimant bears the burden to prove that drug addiction or
alcoholism is not a contributing factor material to [her]
disability."  *Id.*


## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged
in substantial gainful activity since June 30, 2007, her alleged
onset date.  Tr. 27.

At Step Two the ALJ found Plaintiff has the severe
impairments of "right knee degenerative joint disease and ACL
tear; mood disorder, not otherwise specified/bipolar affective
disorder; history of anxiety disorder, not otherwise
specified/posttraumatic stress disorder (PTSD); attention
deficit-hyperactivity disorder (ADHD); antisocial personality
disorder/personality disorder, not otherwise specified; and
history of polysubstance abuse."[3]  Tr. 27.

At Step Three the ALJ found Plaintiff's impairments do not

---

[3]  The Court notes the ALJ based his findings as to these
impairments on the medical diagnoses of Plaintiff that appear in
the record rather than statements in Plaintiff's applications.
*See* Tr. 27, 160.

meet or equal the criteria for any impairment in the Listing of Impairments.  Tr. 28.  The ALJ found Plaintiff has the RFC to perform light work "with the additional limitations:  the work must be unskilled with only occasional climbing of stairs and ramps; no climbing of ladders, ropes or scaffolds; frequent balancing and stooping; occasional kneeling, crouching, and crawling; only occasional dealings with the public, co-workers, and supervisors; and no rapid or frequent changes in routine." Tr. 30.

At Step Five the ALJ found Plaintiff could perform jobs that exist in significant numbers in the national economy such as assembler, packager, and inspector.  Tr. 37.  Accordingly, the ALJ found Plaintiff is not disabled and, therefore, is not entitled to benefits. Tr. 37.


## DISCUSSION

Plaintiff contends the ALJ erred by (1) improperly discrediting Plaintiff's testimony; (2) improperly rejecting the opinions of treating physician Jackson Dempsey, M.D., treating mental-health counselor John Medveckis, M.A., Q.M.H.P., and examining psychologist Eric Morrell, Ph.D.; (3) improperly discrediting Plaintiff's testimony; (4) failing to find Plaintiff's combined alleged impairments meet or equal one of the Listings; and (5) providing an incomplete hypothetical to the VE.

11- OPINION AND ORDER

**I.    Plaintiff's Testimony.**

Plaintiff alleges the ALJ erred by failing to give clear and convincing reasons for rejecting her testimony as to the intensity, persistence, and limiting effects of her symptoms.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403, 1407 (9ᵗʰ Cir. 1986).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d at 750 (citing *Lester*, 81 F.3d at 834.  General assertions that the claimant's testimony is not credible are insufficient. *Id*.  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834).

At the hearing Plaintiff testified her depression is the primary reason she is unable to work.  She stated her mental

12- OPINION AND ORDER

impairments make it difficult for her to get out of bed, but she also has a hard time sleeping and has periods when she stays up for days.  Tr. 48.  Plaintiff testified she is homeless and has been in and out of jail multiple times.  Tr. 49-50.  Plaintiff stated she has a hard time being around people.  Tr. 49. Plaintiff testified she has one "good" week a month when she is able to clean her living space, to make telephone calls, and to shop for groceries.  Tr. 51-52, 57.  Plaintiff stated she has uncontrollable crying spells "all the time," her hands are always shaking due to nervousness and anxiety, and noise causes her anxiety and stress.  Tr. 57-60.  Plaintiff also testified she is unable to work because of right knee pain.  Plaintiff stated her knee pain makes it difficult for her to stand for more than five minutes, and it "locks into place" when she sits.  Tr. 65-66.

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but the ALJ gave Plaintiff's testimony little weight because he found her "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible" to the extent that they are inconsistent with Plaintiff's RFC.

### A.   Mental Impairments

The ALJ appears to have dismissed Plaintiff's testimony regarding her mental impairments based on his conclusion that the record contains evidence that Plaintiff's "mental symptoms were

well controlled with medication taken properly." Tr. 34.  The
ALJ, however, only points to records from a three-month period
(January to March 2008) to support his conclusion even though the
record reflects Plaintiff's condition varied significantly during
that period.  For example, in December 2007 Plaintiff reported
she thought Lamictal was helping, but she was still feeling
anxious.  Tr. 527.  In February 2008 Laura Heesacker, M.S.W,
L.C.S.W., stated Plaintiff presented as extremely anxious, that
her hands were trembling, and that she was having difficulty
following thought processes.  Tr. 522-23.  Although in March 2008
Lynn Sullivan, F.N.P., assessed Plaintiff's bipolar disorder as
"moderate, improved, controlled," Nurse Sullivan had assessed
Plaintiff's bipolar disorder as "severe" just one month earlier.
Tr. 515, 520.  In light of the variability of Plaintiff's
condition during this period, the Court concludes the ALJ's
conclusion that Plaintiff's mental impairments are "well
controlled" with medication is not supported by substantial
evidence in the record.  Tr. 34.  Moreover, Plaintiff's testimony
is supported by the opinion of Dr. Dempsey, Plaintiff's treating
mental-health physician over seven years, who, as explained more
fully below, opined Plaintiff has severe limitations that make
her unable to work due to her mental impairments.  *See* Tr. 886-
91.  Dr. Dempsey stated he has treated Plaintiff for
approximately six or seven years and that she is not a

14- OPINION AND ORDER

malingerer.  Tr. 886, 891.

The record also contains additional evidence that supports
Plaintiff's testimony and Dr. Dempsey's opinion that she is not
capable of working due to her alleged mental impairments.  For
example, Plaintiff has attempted suicide multiple times, and
medical providers have opined at various time during Plaintiff's
alleged period of disability that Plaintiff presents a suicide
risk.  Tr. 629, 663, 803, 859, 862.  In a November 2007 letter,
examining psychologist Eric M. Morrell, Ph.D., stated Plaintiff's
"capacity to hold things together in the long run is what most
concerns me (vs. her capacity to maintain herself for limited
periods of time under observation)."  Tr. 417.  The record also
shows medical providers have assigned Plaintiff with GAF[4] scores
ranging between 30 and 50, the highest of which, as noted even by
the ALJ, "indicat[es] serious symptoms."  Tr. 34, 414, 774, 776,
886.

The Court concludes on this record that the ALJ erred when
he rejected Plaintiff's testimony as to her alleged mental
impairments because he did not provide clear and convincing
reasons for doing so.

_____

[4]  A Global Assessment of Functioning (GAF) score rates a
person's psychological, social, and occupational functioning on a
hypothetical continuum of mental-health illness.  *See* DSM-1V at
34.

**B.   Knee Pain**

The ALJ did not find Plaintiff entirely credible as to the limiting effects of her knee pain.  The ALJ noted in September 2008 that Richard Lotz, F.N.P., gave Plaintiff a cortizone injection in her knee, which immediately improved her symptoms. Tr. 32, 427.  He also noted in December 2008 that Plaintiff presented to an emergency room with an unrelated complaint, but the attending doctor noted Plaintiff's gait was normal and her joints did not have any swelling, stiffness, or redness.  Tr. 32, 433-34.  Furthermore, in May 2009 Plaintiff complained of knee pain, but the examining physician noted she was bearing weight on her right leg and was crossing her legs in a way that would put significant stress on her knee.  At that time Plaintiff's ultrasound was normal, and an x-ray showed only moderate degenerative changes.  Tr. 32, 629.

The Court concludes on this record that the ALJ did not err when he discredited Plaintiff's testimony as to the limiting effects of her knee pain because he provided clear and convincing reasons for doing so.

**II. Medical Opinion Testimony.**

Plaintiff contends the ALJ improperly rejected the opinion of Dr. Dempsey, Plaintiff's treating physician.

An ALJ may reject an examining or treating physician's opinion when it is inconsistent with the opinions of other

treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnart,* 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  Specific, legitimate reasons for rejecting a physician's opinion may include reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue,* 533 F.3d 1035, 1040 (9th Cir. 2008). *See also Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995).

When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1995).

Generally, the more consistent an opinion is with the record as a whole, the more weight an opinion should be given.  20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

Medical sources are divided into two categories: "acceptable" and "not acceptable."  20 C.F.R. §§ 404.1502, 416.902.  Acceptable medical sources include licensed physicians and psychologists.  20 C.F.R. §§ 404.1502, 416.902.  Medical sources classified as "not acceptable" include, but are not

limited to, nurse practitioners, therapists, licensed clinical

social workers, and chiropractors.  SSR 06-03p, at *2.  The

Social Security Administration notes:

> With the growth of managed health care in
> recent years and the emphasis on containing
> medical costs, medical sources who are not
> acceptable medical sources, such as nurse
> practitioners, physician assistants, and
> licensed clinical social workers, have
> increasingly assumed a greater percentage of
> the treatment and evaluation functions
> previously handled primarily by physicians
> and psychologists.  Opinions from these
> medical sources, who are not technically
> deemed acceptable medical sources under our
> rules, are important and should be evaluated
> on key issues such as impairment severity and
> functional effects, along with the other
> relevant evidence in the file.

SSR 06-03p, at *3.  Factors the ALJ should consider when

determining the weight to give an opinion from those "important"

sources include the length of time the source has known the

claimant and the number of times and frequency that the source

has seen the claimant, the consistency of the source's opinion

with other evidence in the record, the relevance of the source's

opinion, the quality of the source's explanation of his opinion,

and the source's training and expertise.  SSR 06-03p, at *4.  On

the basis of the particular facts and the above factors, the ALJ

may assign a not-acceptable medical source either greater or

lesser weight than that of an acceptable medical source.  SSR

06-03p, at *5-6.  The ALJ, however, must provide reasons for the

weight assigned to such opinions to the extent that a claimant or

18- OPINION AND ORDER

subsequent reviewer may follow the ALJ's reasoning.  SSR 06-03p,
at *6.

On July 11, 2011, Dr. Dempsey completed a Mental Health
Impairment Questionnaire regarding Plaintiff in which he
explained he has seen Plaintiff every one-to-three months for
approximately six or seven years.  Dr. Dempsey gave Plaintiff an
Axis I diagnoses of PTSD, bipolar disorder, generalized anxiety,
and polysubstance abuse; gave her an Axis II diagnosis of
borderline personality disorder; and assigned her a GAF score of
40.  Dr. Dempsey noted Plaintiff's condition has only partially
improved with counseling and medication and stated her prognosis
is poor.  Tr. 886.  Dr. Dempsey opined Plaintiff does not have
the ability to carry out short simple instructions; to maintain
regular attendance and to be punctual; to sustain an ordinary
routine without special supervision; to complete a normal workday
and workweek without interruptions from psychologically-based
symptoms; to accept instructions and respond appropriately to
criticism; to get along with others; to respond appropriately to
normal work stress; or to understand, remember, or carry out
detailed instructions.  Tr. 888-89.  Dr. Dempsey also opined
Plaintiff is extremely limited in her ability to maintain
concentration, persistence, or pace and markedly limited in her
ability to perform daily activities and maintain social
functioning.  Tr. 890.  Dr. Dempsey also stated Plaintiff had

experienced more than four episodes of decompensation within the preceding twelve months. Tr. 890. Dr. Dempsey opined Plaintiff's impairments or treatment would cause her to be absent from work more than four days per month. Tr. 891.

The ALJ assigned "very little weight" to Dr. Dempsey's opinion and instead gave "significant weight" to the opinions of nonexamining Disability Determination Services (DDS)[5] psychologists Bill Hennings, Ph.D., and Joshua J. Boyd, Psy.D. Thus, the ALJ found Plaintiff was capable of understanding and remembering short, simple directions, but not detailed tasks, and was able to perform simple tasks for a normal workday with limited co-worker, public, and supervisory contact. Tr. 28-29, 35, 543-60, 639. The ALJ based his rejection of Dr. Dempsey's opinion on the following: (1) it was inconsistent with the treating records; (2) Dr. Dempsey "apparently relied heavily on the claimant's subjective complaints, which are not reliable"; and (3) Dr. Dempsey's opinion was the product of a pre-printed form questionnaire. Tr. 35-36.

Although the ALJ noted Dr. Dempsey's statement that Plaintiff has had four or more episodes of decompensation, each lasting at least two weeks in duration, the ALJ found "there is

---

[5] DDS is a federally-funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a).

simply no documented evidence of extended periods of decompensation in the record." Tr. 35. Although Dr. Dempsey did not provide specific dates, his report of Plaintiff's episodes of decompensation is supported by the opinion of Plaintiff's treating mental-health counselor, John Medveckis, M.A., Q.M.H.P. In a July 11, 2011, letter Medveckis stated: "[A]t least four times in the past year, [Plaintiff] has had major decompensations in mood and behavior which were not related to any substance abuse." Tr. 885. In a January 19, 2011, progress note Medveckis also assessed Plaintiff's risk for suicide as high due in part to "her profound decompensation." Tr. 861.

Although the ALJ contends Dr. Dempsey's opinion is based on Plaintiff's subjective complaints, there is not any such indication in his questionnaire responses. It is, therefore, unclear how the ALJ arrived at that conclusion, and, in any event, the evidence in the record that supports Plaintiff's testimony as to her alleged mental impairments similarly supports Dr. Dempsey's opinion; *e.g.*, documentation of Plaintiff's numerous suicide attempts and GAF scores ranging between 30 and 50 assigned to Plaintiff by medical practitioners. The fact that Dr. Dempsey has seen and treated Plaintiff for mental-health issues continuously for a period of over six years also supports a conclusion that Dr. Dempsey has more than a sufficient basis upon which to opine as to the severity of Plaintiff's mental

impairments.

As noted, the ALJ also rejected the opinion of Dr. Dempsey in part because it was elicited through a pre-printed form questionnaire, which the ALJ describes as containing "a number of leading questions and similar inducements." Tr. 36. The ALJ, however, does not identify the questions that support his conclusion, and, in any event, the Court does not agree. The questionnaire is extensive and includes a number of questions to which Dr. Dempsey added explanations. For example, Dr. Dempsey explained the limitations that restrict Plaintiff from being able to work include the fact that she is easily frustrated, aggravated, irritated, impulsive; is a poor decision-maker; and has strong paranoid tendencies. Dr. Dempsey opined these limitations "add up to great difficulties interacting with others, communicating, negotiating, [and] behaving appropriately." Tr. 889.

The Court concludes on this record that the ALJ erred when he rejected the opinion of Dr. Dempsey because the ALJ did not provide legally sufficient reasons supported by substantial evidence in the record for doing so.

**III. Plaintiff's Other Arguments**

Plaintiff also asserts the ALJ erred in a number of other ways. The Court, however, need not address Plaintiff's additional arguments because, as set forth below, the Court

22- OPINION AND ORDER

credits the opinion of Dr. Dempsey as true and, accordingly, finds Plaintiff's impairments meet the requirements of Listings 12.04 (affective disorders), 12.06 (anxiety-related disorders) and/or 12.08 (personality disorders). The Court, therefore, concludes on this record that the ALJ would have to find at Step Two that Plaintiff is disabled.

## **REMAND**

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel,* 211 F.3d 172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. Remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r,* 635 F.3d 1135, 1138-39 (9th Cir. 2011)(quoting *Benecke v. Barnhart,* 379 F.3d 587, 593 (9th Cir. 2004)). The court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine whether a claimant is disabled under the Social Security Act. *Id*. at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed when: (1) the ALJ has failed to provide legally sufficient reasons for

rejecting such evidence, (2) there are not any outstanding issues
that must be resolved before a determination of disability can be
made, and (3) it is clear from the record that the ALJ would be
required to find the claimant disabled if such evidence were
credited.  *Id.*  The reviewing court should decline to credit
testimony when "outstanding issues" remain.  *Luna v. Astrue,* 623
F.3d 1032, 1035 (9th Cir. 2010).  The "credit-as-true" doctrine
is not a mandatory rule in the Ninth Circuit, but it leaves the
court flexibility in determining whether to enter an award of
benefits upon reversing the Commissioner's decision.  *Connett v.
Barnhart,* 340 F.3d 871, 876 (9th Cir. 2003)(citing *Bunnell v.
Sullivan,* 947 F.2d 341 (9th Cir. 1991)(*en banc*)).

        This Court has determined the ALJ erred when he concluded
Plaintiff was not fully credible as to her mental impairments and
when he rejected the opinion of Dr. Dempsey.  The Court,
therefore, credits as true Dr. Dempsey's opinion because the ALJ
failed to provide legally sufficient reasons for rejecting such
evidence.  As a result, the ALJ would be required to find
Plaintiff disabled based on Dr. Dempsey's opinion.

        The Court, however, points out that there is evidence of
substance abuse in the medical record.  As noted, when there is
medical evidence of substance abuse and the claimant is found to
be disabled, the ALJ must engage in the sequential five-step
inquiry a second time to determine whether drug addiction or

24- OPINION AND ORDER

alcoholism "is a contributing factor material to the determination of disability."  20 C.F.R. § 404.1535(a). Accordingly, there are "outstanding issues that must be resolved before a [final] determination of disability can be made." *Smolen*, 80 F.3d at 1292.

Accordingly, the Court remands this matter to the ALJ for further proceedings for the limited purpose of engaging in the sequential five-step inquiry a second time to determine whether Plaintiff's substance abuse is a contributing factor material to the determination of disability.

<u>**CONCLUSION**</u>

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter to the Commissioner pursuant to sentence four, 42 U.S.C. § 405(g), for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this <u>6th</u> day of June, 2014.

 <u>/s/Anna J. Brown</u>
ANNA J. BROWN
United States District Judge

25- OPINION AND ORDER